WILLIAM J. GEDDES
Nevada Bar No. 6984
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
*Attorneys for Plaintiff Devon Isbell*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEVON ISBELL, an individual, | CASE NO: 3:17-cv-709 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| PARTY CITY CORPORATION, a foreign corporation; MIKE ZAMECNIK, an individual; MIKE FRANCO, an individual; DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 1-50. | **JURY DEMAND** |
| Defendants. | |

COMES NOW Plaintiff DEVON ISBELL, by and through her counsel, WILLIAM J. GEDDES, ESQ. of the law firm THE GEDDES LAW FIRM, P.C., and hereby complains of Defendants PARTY CITY CORPORATION, a foreign corporation; MIKE ZAMECNIK, an individual; MIKE FRANCO, an individual; DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 1-50, inclusive, as follows.

**I.**

**STATEMENT OF THE CASE**

This is an employment-discrimination case arising under the Americans with Disabilities Act. Plaintiff DEVON ISBELL was an employee of Defendant PARTY CITY CORPORATION, from May 18, 2015 through January 5, 2016. Plaintiff worked at the Party City store located at 2825 Northtowne Lane in Reno, Nevada, serving as the store's general manager. Plaintiff alleges herein that she was discriminated against on the basis of her physical disabilities that arose from workplace injuries to her knee. The workplace injury arose when a shelving unit fell over and struck her left knee, trapping her

1

beneath the shelves.  Such unlawful employment discrimination against Plaintiff included Defendants' refusals to accommodate her disabilities, their harassment and retaliation against her, their failure to engage in the interactive process, their disparate treatment in the benefits of her employment, their demotion or reduction in her pay, and their termination of her. Plaintiff's supplemental, state-tort claims assert causes of action for tortious discharge in violation of public policy—relating to Defendants' termination of Plaintiff in retaliation for her having sought worker's compensation benefits for her workplace injuries/disabilities—and slander and intentional infliction of emotional distress relating to Defendants' tortious conduct including falsely accusing Plaintiff of committing insurance fraud and company theft.  Plaintiff seeks monetary, equitable, and injunctive relief.

## II.

### JURISDICTION AND VENUE

1.     The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  In particular, this case asserts federal discrimination claims, actionable under the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA"), codified at 42 U.S.C. § 12101 *et seq*.  This Court has supplemental jurisdiction over the state-law claim of tortious discharge in violation of public policy, slander, and intentional infliction of emotional distress pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  Finally, on information and belief, the Court's Jurisdiction over all state claims of this case is redundantly established under 42 U.S.C. § 1332, on a diversity-jurisdiction basis, inasmuch as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states, as Plaintiff is a citizen of Nevada, Defendant PARTY CITY CORPORATION is is a foreign corporation organized under the laws of Delaware, and on information and belief, has its business headquarters in Rockaway, New Jersey and, on information and belief, Defendants MIKE ZAMECNIK and MIKE FRANCO are residents of California.

2.     Venue is proper in the U.S. District Court situated in Reno, Nevada, under 28 U.S.C. §

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1391(b) because:

(a)     some of the Defendants conducted business in Washoe County, Nevada, and venue is proper in a judicial district in which any defendant resides; and

(b)     a substantial part of the events or omissions giving rise to the claims of this case occurred in Washoe County, Nevada.

### III.

### PARTIES

3.     At all relevant times herein, Plaintiff DEVON ISBELL ("ISBELL") was a citizen of the state of Nevada, residing in the County of Washoe, who was employed by Defendant PARTY CITY CORPORATION as a general manager of the Party City store situated in Washoe County, at 2825 Northtowne Lane, Reno, Nevada 89512.

4.     Defendant PARTY CITY CORPORATION ("PARTY CITY") is a foreign corporation organized under the laws of Delaware, authorized to do business in the state of Nevada and actually doing business as a corporation in the state of Nevada, operating specialty, retail, party-supply stores known as Party City, and at all relevant times herein, PARTY CITY had 500 or more employees and was the employer of ISBELL, who served as its general manager at the Party City store located at 2825 Northtowne Lane, Reno, Nevada 89512, which was operated by PARTY CITY.

5.     Defendant MIKE ZAMECNIK ("ZAMECNIK") is an individual, who, on information and belief, was a resident of the state of California, and at all times relevant hereto, and he was employed by PARTY CITY as a district manager, and ZAMECNKI was ISBELL's manager or supervisor, at all times relevant hereto.

6.     Defendant MIKE FRANCO ("FRANCO") is an individual, who, on information and belief, was a resident of the state of California, and at all times relevant hereto, and he was employed by PARTY CITY as a regional loss-prevention manager, whose work at all times relevant hereto included work at the Party City Store located at 2825 Northtowne Lane, Reno, Nevada 89512.

7.      The true names and capacities, of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are unknown to ISBELL, who sues those Defendants by such fictitious names.  DOE BUSINESS ENTITIES 1-10, inclusive, are parties in contemplation at the time of the

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

3

original filing of this original *Complaint*.  ISBELL alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, at all relevant times, performed acts, or were responsible for performing acts, in their official and private capacities, relating to business-operations and employment/administrative matters at or for PARTY CITY, including those acts or omissions (including tortious conduct, including defamation) relating to matters involving ISBELL's employment, workplace injuries, efforts to continue her employment, her demotion/schedule and pay-reduction, the retaliation committed against her in response to her protected conduct under the ADA, and in response to her pursuing worker's compensation benefits, her termination, and all matters concerning their failure to accommodate ISBELL'S disabilities and their unlawful disability discrimination committed against ISBELL, and their slander committed against ISBELL, as described herein.  ISBELL alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are responsible in some manner for the events and injuries alleged herein.  ISBELL alleges, on information and belief, DOE BUSINESS ENTITIES 1-10, inclusive, are, and at all times relevant hereto were, domestic or foreign business entities of any kind, including but not limited to corporations, associations, partnerships, companies, national associations, organizations, unions, non-profit organizations, and joint ventures, that were qualified to do business in Nevada or held themselves out to the public to be qualified to do business in Nevada, and actually did business as an entity in the State of Nevada, had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  ISBELL will seek leave of Court to amend this *Complaint* to state the true names and capacities of DOE BUSINESS ENTITIES 1-10, inclusive, when they have been ascertained.

8.     The true names and capacities, of the Defendants sued herein as DOE INDIVIDUALS 1-50, are unknown to ISBELL, who sues those Defendants by such fictitious names.   DOE INDIVIDUALS 1-50, inclusive, are parties in contemplation at the time of the original filing of this original *Complaint*.  ISBELL alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, at all relevant times, performed acts, or were responsible for performing acts, in their official and private capacities, relating to business-operations and employment/administrative matters at or for PARTY CITY, including those acts or omissions

(including tortious conduct, including defamation) relating to matters involving ISBELL's employment, workplace injuries, efforts to continue her employment, her demotion/schedule and pay-reduction, the retaliation committed against her in response to her protected conduct under the ADA, and in response to her pursuing worker's compensation benefits, her termination, and all matters concerning their failure to accommodate ISBELL'S disabilities and their unlawful disability discrimination committed against ISBELL, and their slander committed against ISBELL, as described herein.  ISBELL alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, are responsible in some manner for the events and injuries alleged herein.  ISBELL alleges, on information and belief, DOE INDIVIDUALS 1-50, inclusive, are, and at all times relevant hereto were residents of the state of Nevada or had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  DOE INDIVIDUALS 1-50, inclusive, are sued in their individual and official capacities.  ISBELL will seek leave of Court to amend this *Complaint* to state the true names and capacities of such Defendants when they have been ascertained.

9.     On information and belief, at all relevant times herein, each Defendant was the employer, supervisor, employee, and/or agent of the other, and some or all of Defendant's acts and omissions occurred during the course and scope of such employment and agency, and such acts and omissions were taken at the instruction of, at the request of, at the behest of, and/or for the benefit of one or more of the other Defendants.

## IV.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

10.     At all times relevant herein, ISBELL was employed by PARTY CITY as a store general manager at the Party City store operated by PARTY CITY, situated at 2825 Northtowne Lane, Reno, Nevada 89512.  ISBELL was employed by PARTY CITY from May 18, 2015 to January 5, 2016, when she was terminated by PARTY CITY.

11.     On August 25, 2015, ISBELL was injured ("Workplace Injury") at work, in the line of duty, when heavy, steel shelving (about 12 shelves) fell over and struck her left knee, trapping her beneath them.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

12.    ISBELL received medical treatment and care, including medication and doctor-ordered work restrictions.

13.    Initially, the physical impairments to ISBELL arising from the Workplace Injury substantially limited one or more of ISBELL's major life activities, including walking, standing, climbing ladders, squatting, kneeling, lifting more than 50 lbs, and pushing/pulling more than 50 lbs, and initially, ISBELL had to wear a splint up to 8 hours or more per day.

14.    ISBELL'S injuries sustained in the Workplace Injury and its sequela constituted physical disabilities ("Disabilities"), within the meaning of the ADA/ADAAA ("ADA") codified at 42 U.S.C. § 12102 *et seq*.

15.    ISBELL's supervisor Defendant ZAMECNIK demonstrated an animus toward ISBELL's Disabilities and her pursuit of worker's-compensation benefits.

(a)    For example, after the Workplace Injury occurred, ZAMECNIK insisted that they did not have time to file a worker's compensation claim for ISBELL, admonishing ISBELL, "Don't be a pussy!"

(b)    For example, after the Workplace Injury occurred, ZAMECNIK admonished ISBELL when telling her words to the effect that she had better "work [her] butt off for the next three days."

16.    ISBELL sought medical attention the next day, August 26, 2015, pursuant to which she was placed on a medical restriction by her doctor, and this information was convyed to and known by PARTY CITY and its management, including all Defendants sued herein, which medical restrictions and "light duty" requests and orders constituted a request for an accomodation by ISBELL under the ADA.

17.    Initially, ISBELL's work restrictions were prescribed by her doctor as follows:

(a)    May lift up to 50 lbs frequently, up to six hours per day;

(b)    May push/pull up to 50 lbs frequently, up to six hours per day;

(c)    May stand — occasionally, up to 3 hours per day;

(d)    May walk—occasionally, up to 3 hours per day;

(e)    Must wear splint constantly, up to 8 hours or greater per day; and

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

(f)     No climbing ladders; and

(g)     May squat/kneel occasionally; no climbing ladders while carrying greater than 10 pounds of weight.

18.     PARTY CITY failed to reasonably accommodate ISBELL's Disabilities, including because the store management placed ISBELL on "light duty," in name only; in reality, ISBELL was still required to work the same job duties as before the injury, with the key difference being that, on "light duty" she was limited to six-hour shifts.  However, ISBELL's work restrictions did not permit her to perform full, ordinary duties limited to six-hour shifts; the work restrictions restricted her to certain activies for 3, 6, and 8 hours, as described herein;

19.     On September 9, 2015, ZAMECNIK failed to accommodate ISBELL's Disabilities, when he ordered ISBELL to work overnighters and split-double-shifts, to make up for the fact that their Party City store was behind schedule, allegedly because ISBELL was on "light duty."

20.     On September 10, 2015, ZAMECNIK called ISBELL when she was at home, during which call ZAMECNIK continued to demonstrate his animus toward ISBELL's disability. Specifically, ZAMECNIK blamed ISBELL and her disability for getting him into trouble with the company, pursuant to which ZAMECNIK told ISBELL that the company would not accommodate her disability, stating words to the effect, "You and your little work restrictions, I'm just calling to let you know that we won't be accommodating them."  ISBELL asked Zamecnik what was going on, and he replied, "Yeah, we have no use for you."

21.     Even though ISBELL had previously submitted her worker's compensation paperwork to ZAMECNIK, ZAMECNIK ordered ISBELL to re-submit all her medical paperwork directly to him for his review, and ZAMECNIK told ISBELL not to report to work until further notice.   ISBELL was suspended for four days.

22.     This adverse treatment by PARTY CITY and its management against ISBELL, including this retaliation, these refusals to accommodate ISBELL's disability, this hostility and harassment toward ISBELL, and this suspension of ISBELL was because of, or substantially motivated by, her disability, and such conduct by PARTY CITY and its management constituted unlawful retaliation for ISBELL having engaged in the protected conduct of requesting an accommodation for

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

her disability and complaining about the company's failure to reasonably accommodate her disability.

23.    Furthermore, such adverse treatment was taken against ISBELL in retaliation for ISBELL pursuing worker's compensation benefits.

24.    Unfortunately, such unlawful discrimination and retaliation did not end on September 10, 2015, but continued throughout the remainder of ISBELL's employment with PARTY CITY, until the date of her termination on January 5, 2016, as described herein.

25.    On September 13, 2015, ZAMECNIK ordered ISBELL to report back to work the following day, September 14, 2015, at which time ISBELL's work restriction had not been modified or lessened.

26.    On September 14, 2015, ISBELL returned to work and reported to ZAMECNIK, who ordered her to work a minimum of six, 12-hour shifts per week "to make up for lost time," an act of unlawful retaliation.

27.    ISBELL protested this violation of her medical restriction, telling ZAMECNIK that her medical restriction for her disability limited her to three hours walking and/or standing per day.  This protest constituted a further act of protected conduct under the ADA, engaged in by ISBELL.   In response, ZAMECNIK told ISBELL that she could sit in a chair in the office for the other nine hours.

28.    On September 21, 2015, ZAMECNIK visited ISBELL's Party City store and continued to express animus toward her Workplace Injury and Disabilities, including by stating that he and the company questioned the validity of her worker's compensation claim, and at that time ZAMECNIK made statements or implications of fact to ISBELL, that she was dishonest and/or filed a fraudulent worker's compensation or insurance claim, which is a crime.  Such statements and implications of fact were made in the presence of third parties, including Thom Brisson, an assistant manager employed by PARTY CITY, amounting to defamation.  This was also an act of harassment based on ISBELL's Disabilities.

29.    ZAMECNIK then disregarded ISBELL's medical restriction by ordering her to work the following morning to hang signage for three hours, including by use of a ladder, prior to a medical procedure she had scheduled.

30.    On September 23, 2015, the harassment continued, when ZAMECNIK called ISBELL

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

on the phone and accused her of committing fraud because her MRI results were not released to her at the time of the procedure.  On information and belief, such an accusation was made in the presence of third parties.

31.    On September 25, 2015, the harassment and discrimination continued.  Prior to that date, ISBELL was a salaried employee, earning $65,000.00 per year and working about 47.5 hours per week.  However, on September 25, 2015, ISBELL's pay was reduced, because of, or motivated by, her Disabilties, and ZAMECNIK directed her to maintain a manual timecard so that she could prove that she was working no more than six hours per day.

32.    In being forced to work not more than 6 hours per day, and being paid hourly, ISBELL's pay was reduced by at least 20% or by $13,000.00 per year, and this amounted to harassment resulting in a tangible job detriment.

33.    As well, ISBELL's work restriction did not require that she| not work more than six hours per day; her work restriction limited certain activities throughout an eight-hour shift.

34.    During a visit to ISBELL's Party City store on September 28, 2015, ZAMECNIK told ISBELL to resubmit her time card for the prior week, including all hours worked before September 25, 2015, and he insinuated that her medical claim and Disabilities were fraudulent and non-existent, further evidencing animus toward ISBELL's Disabilities and her pursuit of worker's compensation claims.  On information and belief, such statements were made in the presence of third parties.

35.    On October 2, 2015, ZAMECNIK continued the harassment of ISBELL by calling her doctor and speaking to him in a threatening manner, aimed at harassing and otherwise violating the rights of ISBELL.  On information and belief, such statements were made in the presence of third parties.

36.    ZAMECNIK actively tried to violate ISBELL's work restriction and refuse to accommodate her disability when he told ISBELL's doctor words to the effect that, "he needed ISBELL back at work with no restrictions ASAP."

37.    ISBELL's doctor reportedly responded by telling ZAMECNIK words to the effect, "what you really need are shelves that don't fall on employees and injure them."

38.    At that point in the conversation, ZAMECNIK stated or implied to ISBELL's doctor that

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

the accident of the Workplace Injury did not actually occur, which amounted to defamation/slander *per se* of ISBELL, by implication of fact, in that ZAMECNIK accused ISBELL of fraudulently staging the workplace accident and wrongfully filing medical claims, in violation of the law.  On information and belief, such statements were made in the presence of third parties.

39.     These further acts of harassment and discrimination were performed against ISBELL because of her Disabilities and in retaliation for her protected conduct of seeking an accommodation and for submitting my October 23, 2015 letter to PARTY CITY's HR, requesting an investigation and complaining of the aforementioned conduct made unlawful by anti-discrimination laws.

40.     PARTY CITY also failed to properly engage in the interactive process regarding the making of a reasonable accommodation to ISBELL's disability, that would allow her to continue to work there, resulting in the tangible job detriments of suspension, loss of and reduction in income and termination.

41.     On October 23, 2015, PARTY CITY docked ISBELL's pay because she was disabled and was restricted to "light duty," and this amounted to ADA harassment resulting in a tangible job detriment.

42.     This loss of pay occurred without any prior conversation with, or notification to, ISBELL by the company, its Human Resource Department, ZAMECNIK, or any PARTY CITY representative.

43.     On that same day, October 23, 2015, ISBELL wrote a letter to Kim Rector, the company's Regional Health Resources Manager, outlining her grievance of these matters, which constitute violations of anti-discrimination laws.

44.     This act of letter-writing constituted protected conduct, under the ADA.

45.     On information and belief, in or about late October or early November 2015, ZAMECNIK was reassigned to manage stores in California, and Todd Wright took over as the District Manager and supervisor to ISBELL at the Party City Store in Reno, Nevada, through the date of ISBELL's termination on January 5, 2016.

46.     On November 17, 2015, ISBELL got a call from Kim Rector, who requested additional information about ISBELL's October 23, 2015 letter to her.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

47.     On ISBELL's very next shift, she was put on unpaid leave, which ultimately led to her firing.   Among other things, this act of placing ISBELL on unpaid leave amounted to unlawful retaliation under the ADA by PARTY CITY and unlawful ADA harassment resulting in a tangible job detriment.

48.     In suspending ISBELL, without having engaged in the interactive process to otherwise reasonably accommodate ISBELL's disability, PARTY CITY violated the ADA.

49.     A pretext was offered by PARTY CITY concerning ISBELL's suspension, that she could come back to work in six weeks, when she was "all better."

50.     However, PARTY CITY could not have known whether ISBELL would be "all better" in exactly six weeks.  As well, the phrase "all better" was, by design, subjective, vague, and ambiguous.

51.     Notwithstanding her DISABILITIES, at all relevant times hereto, ISBELL could perform the essential functions of her job, with or without a reasonable accommodation.

52.     At the time of her suspension from employment with PARTY CITY, ISBELL was performing the essential functions of her job, including by: doing payroll, supervising, managerial tasks, and directing others as the manager (or being assisted by others) to climb ladders, lifting, and crouching when performing duties.

53.     Later, on December 28-29, 2015, PARTY CITY sent ISBELL an email that stated that her return to work hinged on a doctor's release.  This categorial demand, without engaging in the interacative process to ascertain reasonable accommodations to ISBELL, as alternatives to her termination, amounted to disability discrimination and failure to engage in the interactive process; in violation of the ADA.

54.     On December 31, 2015, ISBELL received a voicemail and an email from Todd Wright, the new district manager of PARTY CITY, which stated that ISBELL's leave of absence would expire on Saturday, January 2, 2016, and that she was required to report back to work at 11:00 a.m. on Monday, January 4, 2016.

55.     ISBELL returned to work on January 4, 2016, ready, willing, and able to perform the essential functions of her job, with or without a reasonable accommodation, of which she advised PARTY CITY management that day.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

56.     In response, PARTY CITY management asked simply whether ISBELL's work restrictions were the same as they were six weeks earlier.

57.     ISBELL stated that they were the same.  However, as she had already demonstrated prior to her suspension, she was able to perform the essential functions of her job.

58.     On January 4, 2016, in a further act of animus toward ISBELL's Disabilities, and in a further act of retaliation, hostility, and harassment, Defendant MIKE FRANCO, PARTY CITY's Regional Loss Prevention Manager, Defendant PARTY CITY, and its employees, including DOE INDIVIDUALS 1-50, made false publications and implications of fact to, or in the presence of, ISBELL and third parties, including persons at the Party City store located at 2825 Northtowne Lane in Reno, Nevada, that ISBELL committed crimes including theft from the company, and such false statements amounted to defamation *per se*.

59.     ISBELL had not committed any such theft, and she was never shown to have committed any such theft by Defendants, nor was the matter pursued against her by Defendants.

60.     Instead, Isbell was fired the next day, on January 5, 2016.

61.     These further acts of harassment and discrimination by PARTY CITY were performed against ISBELL because of, or substantially motivated by, her Disabilities and in retaliation for her protected conduct of seeking an accommodation and for her submitting the October 23, 2015 letter to HR, described herein, requesting an investigation and complaining of conduct made unlawful by anti-discrimination laws.

62.     In taking such summary, adverse action against ISBELL, PARTY CITY failed to properly engage in the interactive process regarding the making of a reasonable accommodation to her Disabilities, that would allow her to continue to work at the Party City store.

63.     On information and belief, after ISBELL was terminated from PARTY CITY, Defendants, including DOE INDIVIDUALS 1-50, published, and are continuing to publish, false and defamatory information to prospective employers of ISBELL concerning ISBELL's honesty, competence, and employment tenure with PARTY CITY, which false publications and acts of wrongful intereference have hindered, delayed, and prevented ISBELL from obtaining employment and which have also defamed her, all of which harm continues to this day, and it is necessary for the Court in this

1   action to intervene by providing equitable, declaratory, and injunctive relief to fully and adequately

2   remedy such ongoing harms.

3       64.    Based on the foregoing, ISBELL has suffered an irreparable injury, and the remedies

4   available at law, such as monetary damages, are inadequate to compensate for that injury.   This

5   inadequacy is in part based on the fact that PARTY CITY is currently publishing false and defamatory

6   information to prospective employers of ISBELL concerning ISBELL's honesty, competence, and

7   employment tenure with PARTY CITY, which are wrongfully interfering with ISBELL's ability to

8   obtain employment and otherwise defaming her.   As such ISBELL is entitled to injunctive relief,

9       65.    On August 30, 2016, ISBELL caused her unlawful-discrimination claim to be mailed to

10   the Equal Employment Opportunity Commission ("EEOC"), and the EEOC Claim was received by the

11   EEOC on September 2, 2016, which constitutes the date on which ISBELL's EEOC claim was

12   officially filed with the EEOC.   Such a filing was timely.

13       66.    ISBELL timely submitted, or caused to be submitted, a charge of unlawful disability

14   discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") in

15   EEOC Claim No. 550-2016-01187, as alleged herein.

16       67.    On November 27, 2017 the EEOC issued a "right-to-sue letter" for the federal-

17   discrimination claims of this case set forth in EEOC Claim No. 550-2016-01187, pursuant to 42 U.S.C.

18   § 2000e-5(f), and ISBELL filed the instant suit within ninety (90) days of the issuance of that "right-to-

19   sue letter."

20                               ***FEDERAL CLAIM***

21                                   **V.**

22                      **FIRST CLAIM FOR RELIEF**

23     **UNLAWFUL DISCRIMINATION, HARASSMENT, AND RETALIATION**
       **BASED ON DISABILITY**

24

25       **(Americans With Disabilities Act and Amendment Act - 42 U.S.C. § 12101 *et seq.*)**

26     **(Asserted against the COUNTY, NJDC, DOE GOVERNMENTAL ENTITIES 1-10, and**
       **DOE BUSINESS ENTITIES 1-10)**

27       68.    ISBELL incorporates by reference all prior allegations of this *Complaint*, as though fully

28   set forth herein.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

69.    At all relevant times herein, ISBELL'S injuries and sequela arising from the Workplace Injury were physical disabilities and related conditions ("Disabilities"), causing pain, suffering, and physical limitations to her body, including to her left knee, which Disabilities are covered by, and within the meaning of, the ADA codified at 42 U.S.C. § 12102 *et seq.*, in that these physical impairments substantially limited one or more of ISBELL'S major life activities, including the activities of walking, standing, climbing ladders, squatting, kneeling, lifting more than 50 lbs., and pushing/pulling more than 50 lbs., for which physical disabilities, ISBELL was receiving and/or had received medical treatment and care, including care that which required her to initially wear a splint, up to 8 hours a day.

70.    At all relevant times herein, Defendants, and each of them, including their agents and employees:

    (a)    were aware of ISBELL'S Disabilities;

    (b)    were aware that ISBELL had a record of such Disabilities; and/or

    (c)    regarded ISBELL as having physical impairments, including her Disabilities, that substantially limited one or more of her major life activities, including walking, standing, climbing ladders, squatting, kneeling, lifting more than 50 lbs., and pushing/pulling more than 50 lbs.

71.    Notwithstanding ISBELL'S Disabilities, at all relevant times herein, ISBELL could perform the essential functions of her job, with or without a reasonable accommodation of her Disabilities.

72.    At all relevant times herein, Defendants sued in this claim for relief (including through their employees and agents), and each of them, intentionally engaged in unlawful discrimination and disparate treatment of ISBELL, as compared to other similarly-situated employees, and such differences in treatment were based on ISBELL'S protected characteristic of her Disabilities, described herein.

73.    Such unlawful harassment, discrimination and disparate treatment of ISBELL based on ISBELL'S disabilities included Defendants' acts and omissions when:

    (a)    failing to accommodate ISBELL'S Disabilities described herein;

    (b)    harassing ISBELL and creating a hostile-work environment for ISBELL, as

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

14

described herein, including that resulting in a tangible job detriment, and including when engaging in the following, pervasive conduct:

(i)     After the Workplace Injury occurred, ZAMECNIK engaged in verbal abuse against ISBELL, inappropriately admonishing her "Don't be a pussy!" with regard to her Disabilities, as described hereinabove;

(ii)    On September 9, 2015, ZAMECNIK failed to accommodate ISBELL's Disabilities, when he ordered ISBELL to work overnighters and split-double-shifts, to make up for the fact that their Party City store was behind schedule, allegedly because ISBELL was on "light duty," as described hereinabove;

(iii)   On September 10, 2015, ZAMECNIK engaged in verbal abuse of ISBELL, when calling her at home, to blame her disability for getting him into trouble with the company, and further abusively stating that the company would not accommodate her disability and belittling and mocking ISBELL and her Disabilities when telling ISBELL, "You and your little work restrictions, I'm just calling to let you know that we won't be accommodating them,"  and adding, "Yeah, we have no use for you," as described hereinabove;

(iv)    ZAMECNIK harassing ISBELL when unreasonably ordering her to re-submit all her medical paperwork directly to him for his review, even though ISBELL had previously submitted her worker's compensation paperwork to him, and his telling ISBELL not to report to work until further notice and suspending her for four days, as described hereinabove;

(v)     Upon ISBELL's return to work on September 14, 2015, ZAMECNIK, ordered ISBELL to work a minimum of six, 12-hour shifts per week "to make up for lost time," notwithstanding her Disabilities and notwithstanding the fact that it was he who arbitrarily suspended creating such "lost time," as described hereinabove;

(vi)    On September 21, 2015, ZAMECNIK verbally abused ISBELL, wrongfully accusing her of filing an invalid worker's compensation claim, relating to her Disabilities, as described hereinabove;

(vii)   On September 22, 2015, ZAMECNIK disregarded ISBELL's medical restriction of her Disabilities, by ordering her to hang signage for three hours, including by use of a

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

ladder, prior to a medical procedure she had scheduled, as described hereinabove;

(viii)   On September 23, 2015, ZAMECNIK called ISBELL on the phone and verbally abused her, accusing her of committing fraud because her MRI results were not released to her at the time of her medical procedure, as described hereinabove;

(ix)   On September 25, 2015, ZAMECNIK reduced ISBELL's pay by at least 20% or by $13,000.00 per year, as described herein;

(x)   On September 28, 2015, ZAMECNIK unreasonably demanded that ISBELL resubmit her time card for the prior week, including all hours worked before September 25, 2015, and he insinuated that her medical claim and Disabilities were fraudulent and non-existent, as described herein;

(xi)   On October 2, 2015, ZAMECNIK phone ISBELL's doctor and speaking to him in a threatening manner, aimed at harassing and otherwise violating the rights of ISBELL, whereupon ZAMECNIK actively tried to violate ISBELL's work restriction and refuse to accommodate her disability when he told ISBELL's doctor words to the effect that, "he needed ISBELL back at work with no restrictions ASAP" and stating or implying to ISBELL's doctor that the accident of the Workplace Injury did not actually occur, as described herein;

(xii)   On October 23, 2015, PARTY CITY docked ISBELL's pay because she was disabled and was restricted to "light duty," as described herein; and

(xiii)   On January 4, 2016, PARTY CITY management engaged in further verbal abuse of ISBELL, by wrongfully accusing her of theft, as described herein.

(c)   imposing tangible-job detriments on ISBELL, as described herein, including by:

(i)   suspending her without pay, as described herein;

(ii)   reducing her pay, as described herein; and

(iii)   by terminating ISBELL;

(d)   otherwise engaging in disparate treatment of ISBELL regarding the terms and conditions of employment there, as alleged herein; and

(e)   terminating ISBELL from her employment because of her disability and substantially motivated by her disability, as described herein.

16

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

74.     At all relevant times herein, Defendants sued in this claim for relief (including through their employees and agents), and each of them, intentionally engaged in the unlawful discrimination, disparate treatment, harassment, retaliation, and adverse actions against ISBELL, as described herein, because of ISBELL'S Disabilities, for which Defendants sued in the claim for relief are liable for their culpable conduct under the ADA and 42 U.S.C. § 12101 *et seq*.

75.     At all relevant times herein, ISBELL'S Disabilities were a motivating factor in the decisions of the Defendants sued in this claim for relief (including through their employees and agents), and each of them, to intentionally engage in the unlawful discrimination, disparate treatment, harassment, retaliation, and adverse actions against ISBELL, as described herein, for which Defendants sued in this claim for relief are liable for their culpable conduct under the ADA and 42 U.S.C. § 12101 *et seq*.

76.     At all relevant times herein, ISBELL engaged in an activity protected under federal law, including:

(a)     when ISBELL requested reasonable accommodations for her Disabilities, which requests were denied, as described herein;

(b)     when Defendants sued in this claim for relief (including through their employees and agents) failed to engage in the interactive process with ISBELL for her requests for accommodation, as described herein;

(c)     when ISBELL called into question the appropriateness of Defendants' actions that are made unlawful by anti-discrimination laws, including when ISBELL advised PARTY CITY management that it was not reasonably accommodating her disability and violating her light-duty work restrictions; and

(d)     when ISBELL sent her letter of complaint to PARTY CITY's human resourses manager Kim Rector on October 23, 2015, as described hereinabove.

77.     At all relevant times herein, Defendants sued in this claim for relief (including through their employees and agents), and each of them, subjected ISBELL to the adverse employment actions described herein, and ISBELL was so subjected to such adverse employment action because of her participation in such protected activity relating to her Disabilities.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

17

78.     At all relevant times herein, ISBELL suffered one or more tangible job detriments/tangible employment actions, as a result of the unlawful disability discrimination and retaliation alleged herein, including as described herein.

79.     As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ISBELL'S Disabilities and protected conduct described herein, ISBELL has suffered, and continues to suffer economic losses, including wrongful interference with her ability to find new employment, personal injuries, and damages, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory and equitable damages, in an amount to be proven at trial.

80.     As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ISBELL'S Disabilities and protected conduct described herein, ISBELL has had to retain the services of attorneys in this matter, and she therefore is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and court costs, in an amount to be proven at trial.

81.     As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ISBELL'S Disabilities and protected conduct described herein, ISBELL is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants sued in this claim for relief, and each of them, violated ISBELL'S rights by engaging in unlawful discrimination, harassment, and retaliation, as alleged herein.

82.     As a result of the intentional, unlawful, discriminatory, harassing, and retaliatory conduct by Defendants sued in this claim for relief (including through their employees and agents), and each of them, based on ISBELL'S Disabilities and protected conduct described herein, ISBELL is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants sued in this claim for relief, and each of them, to give effect to the rights of ISBELL, and to

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

18

take other appropriate action, including reinstatement to her prior employment position, if appropriate and feasible, with full pay and benefits as if never terminated, based upon evidence produced at trial.

*STATE CLAIMS*

**VI**

**SECOND CLAIM FOR RELIEF**

**Tortious Discharge in Violation of Public Policy |
Retaliation for Filing Worker's Compensation Claim**

(Asserted against all Defendants)

83.     ISBELL incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

84.     Retaliatory discharge by an employer, in response to an employee seeking worker's compensation benefits, is actionable in tort, as violative of public policy.

85.     At all relevant times hereto, ISBELL pursued worker's compensation benefits for her work-related injuries, prior to her termination, as described herein.

86.     Defendants retaliated against ISBELL for her seeking worker's compensation benefits, including by terminating her employment.

87.     Accordingly, Defendants tortiously discharged ISBELL, in violation of public policy causing injury, harm, and damages to ISBELL, and Defendants are liable for such tortious discharge.

88.     As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants, including their employees and agents, as described herein, ISBELL incurred, and will continue to incur in the future, damages, in an amount to be proven at trial.

89.     As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, and/or careless conduct of Defendants, including their employees and agents, as described herein, ISBELL sustained harm and injury including, economic losses, physical injury, mental injury, mental anguish, humiliation, embarrassment, emotional distress, inconvenience, pain, suffering, and damages, entitling ISBELL to compensatory damages, as allowed by law, according to proof at trial.

19

90.     As a further direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants, including their employees and agents, as described herein, ISBELL has had to retain the services of attorneys in this matter, and he therefore, seeks reimbursement for attorney's fees and costs.

**VII**

**THIRD CLAIM FOR RELIEF**
**Defamation – Slander and Slander *Per Se***

(Asserted against all Defendants)

91.     ISBELL incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

92.     On information and belief, Defendants ZAMECNIK, PARTY CITY, and DOE INDIVIDUALS 1-50, and each of them, without privilege, orally published false and defamatory statements and/or implications of fact about ISBELL to third parties, and/or within the hearing of third parties, as described herein, including the following statements:

(a)     On or about September 21, 2015, ZAMECNIK falsely stated or implied that ISBELL filed a fraudulent worker's compensation claim, in violation of the law, as described herein, and, on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

(b)     On or about September 23, 2015, ZAMECNIK falsely stated that ISBELL committed worker's compensation fraud and/or insurance fraud because her MRI results were not released to her at the time of the medical procedure, as described herein, and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

(c)     On or about September 28, 2015, ZAMECNIK falsely stated or implied that ISBELL's medical claim, insurance claim, and/or worker's compensation claim and workplace injuries were fraudulent and non-existent, as described herein, and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

(d)     On or about October 2, 2015, ZAMECNIK falsely stated or implied to ISBELL's doctor that ISBELL staged the workplace accident and/or Workplace Injuries and/or knowingly, fraudulently, and wrongfully filed a false worker's compensation, medical claim, insurance claim, and/or other claim relating to her Workplace Injuries, in violation of the law, as described herein, and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time; and

(e)     On January 4, 2016, Defendant MIKE FRANCO, PARTY CITY's Regional Loss Prevention Manager, Defendant PARTY CITY, and its employees, including DOE INDIVIDUALS 1-50, made false publications and implications of fact to, or in the presence of, ISBELL and third parties, including persons at the Party City Store situated at 2825 Northtowne Lane in Reno, Nevada, that ISBELL committed crimes including theft from the company, and such false statements amounted to defamation *per se*.

(f)     On information and belief, after ISBELL was terminated from PARTY CITY and continuing through the current date, Defendants, including DOE INDIVIDUALS 1-50, published, and are continuing to publish, false and defamatory information to prospective employers of ISBELL concerning ISBELL's honesty, competence, and employment tenure with PARTY CITY.  The state of mind, intent, and level of culpability of Defendants, when making these false and defamatory statements amounted to, and amounts to, recklessnes and/or the willful and intentional publication of such false statements, for which false and defamatory statements Defendants and PARTY CITY, as employers or former employers were, and are, without privilege to publish.  On information and belief such false and defamatory publications will continue indefinitely into the future, on an ongoing basis, causing perpetual and irreparable harm to ISBELL, who seeks gainful employment.  These false and defamatory publications and acts of wrongful interefence have hindered, delayed, and prevented ISBELL from obtaining employment.  Such harm continues to this day, and it is necessary for the Court to provide equitable, declaratory, and injunctive relief to fully and adequately remedy such ongoing harms, which relief ISBELL is entitled to receive.

93.     These statements were defamatory, as they would tend to lower ISBELL in the estimation of the community, and otherwise excite derogatory opinions about ISBELL and hold

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

ISBELL up to contempt.

94.     These defamatory statements and implications of fact accused ISBELL of dishonesty, fraud, and committing crimes, constituting defamation *per se*, for which damages are presumed.

95.     Moreover, these defamatory communications imputed ISBELL's lack of fitness for her trade, business, or profession, as a store manager, and/or tended to injure ISBELL in her business as a store manager, and, accordingly, such defamation constitutes defamation *per se*, for which ISBELL's damages are presumed.

96.     On information and belief, Defendants sued in this cause of action were at fault when making such defamatory publications to third parties, amounting to at least negligence, and such fault was actually intentional or rose to the level of recklessness.

97.     As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants sued in this cause of action, and each of them, ISBELL suffered actual or presumed damages and sustained injury, harm, suffering, mental anguish, and damages, entitling ISBELL to compensatory and presumed damages, and punitive damages as allowed by law, according to proof at trial.

98.     As a further, direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of Defendants sued in this casue of action, ISBELL has had to retain the services of attorneys in this matter, and she therefore, seeks reimbursement for attorney's fees and costs.

## VIII

### FOURTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

(Asserted against all Defendants)

99.     ISBELL incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

100.     The conduct of Defendants ZAMECNIK, PARTY CITY, and DOE INDIVIDUALS 1-50, and each of them, was extreme and outrageous, as described herein, including the following conduct, whether considered separately or in the totality of the circumstances:

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

(a)     When ISBELL's Workplace Injury occurred, ZAMECNIK insisted that they did not have time to file a worker's compensation claim for ISBELL, and he admonished ISBELL, "Don't be a pussy!";

(b)     For example, after the Workplace Injury occurred, ZAMECNIK admonished ISBELL when telling her words to the effect that she had better "work your butt off for the next three days";

(c)     On September 9, 2015, ZAMECNIK failed to accommodate ISBELL's Disabilities, when he ordered ISBELL to work overnighters and split-double-shifts, to make up for the fact that their Party City store was behind schedule, allegedly because ISBELL was on "light duty";

(d)     On September 10, 2015, ZAMECNIK telephoned ISBELL at home, during which call ZAMECNIK blamed ISBELL and her disability for getting him into trouble with the company, pursuant to which ZAMECNIK told ISBELL that the company would not accommodate her disability, stating, "You and your little work restrictions, I'm just calling to let you know that we won't be accommodating them."  ISBELL asked Zamecnik what was going on, and he replied, "Yeah, we have no use for you";

(e)     Even though ISBELL had previously submitted her worker's compensation paperwork to ZAMECNIK, ZAMECNIK unnecessarily ordered ISBELL to re-submit all her medical paperwork directly to him for his review, and ZAMECNIK told ISBELL not to report to work until further notice, suspending ISBELL for four days;

(f)     On September 14, 2015, ISBELL returned to work and reported to ZAMECNIK, who ordered her to work a minimum of six, 12-hour shifts per week "to make up for lost time";

(g)     On or about September 21, 2015, ZAMECNIK falsely stated or implied that ISBELL filed a fraudulent worker's compensation claim, in violation of the law, as described herein, and, on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

(h)     On September 21, 2015, ZAMECNIK visited ISBELL's Party City store and continued to express animus toward her Workplace Injury and Disabilities, including by stating that he

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

and the company's human resources department questioned the validity of her worker's compensation claim;

(i)     On or about September 23, 2015, ZAMECNIK falsely stated that ISBELL committed worker's compensation fraud and/or insurance fraud because her MRI results were not released to her at the time of the medical procedure, as described herein, and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

(j)     On or about September 28, 2015, ZAMECNIK falsely stated or implied that ISBELL's medical claim, insurance claim, and/or worker's compensation claim and workplace injuries were fraudulent and non-existent, as described herein, and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time;

(k)     Without a valid basis for doing so, but to cause severe emotional distress to ISBELL, or in reckless disregard of the same, ZAMECNIK accusatorily warned ISBELL about the consequences of filing of a fraudulent claim, and this was a clear act of harassment, given that her injury occurred at work, in the presence of other workers;

(l)     ZAMECNIK then disregarded ISBELL's medical restriction by ordering her to work the following morning to hang signage for three hours, including by use of a ladder, prior to a medical procedure she had scheduled;

(m)     On September 25, 2015, the harassment and discrimination continued. Prior to that date, ISBELL was a salaried employee, earning $65,000.00 per year and working about 47.5 hours per week. However, on September 25, 2015, ISBELL's pay was reduced when ZAMECNIK directed her to maintain a manual timecard so that she could prove that she was working no more than six hours per day. In being forced to work not more than 6 hours per day, and being paid hourly, ISBELL's pay was reduced by at least 20% or by $13,000.00 per year;

(n)     During a visit to ISBELL's Party City store on September 28, 2015, ZAMECNIK unnecessarily ordered ISBELL to resubmit her time card for the prior week, including all hours worked before September 25, 2015, and he insinuated that her medical claim and Disabilities

were fraudulent and non-existent, further evidencing animus toward ISBELL's Disabilities and her pursuit of worker's compensation claims.

(o)     On or about October 2, 2015, ZAMECNIK falsely stated or implied to ISBELL's doctor that ISBELL staged the workplace accident and/or Workplace Injuries and/or knowingly, fraudulently, and wrongfully filed a false worker's compensation, medical claim, insurance claim, and/or other claim relating to her Workplace Injuries, in violation of the law, as described herein , and on information and belief, PARTY CITY and DOE INDIVIDUALS 1-50 also made such false statements, including to ZAMECNIK and others at or about that same time; and

(p)     On or about January 5, 2016, PARTY CITY and DOE INDIVIDUALS 1-50 knowingly made false statements in the presence of others that ISBELL had committed theft from the company.

106.    ISBELL suffered such extreme or severe emotional distress, which was caused by all the Defendants sued in this claim for relief, as described herein.

107.    The Defendants sued in this claim for relief, and each of them, intended to cause emotional distress to ISBELL or they had a reckless disregard for causing emotional distress to ISBELL.

108.    The conduct of all Defendants sued in this claim for relief, and each of them, as described herein, was intentional, malicious, willful, deliberately indifferent, oppressive and done in a reckless disregard of ISBELL's rights, health, and safety, proximately causing injuries and damages to ISBELL.

109.    As a direct and proximate result of the culpable conduct of all Defendants sued in this claim for relief, and each of them, as described herein, ISBELL incurred, and will continue to incur in the future, medical expenses, in an amount to be proven at trial.

110.     As a direct and proximate result of the intentional, malicious, willful, deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of the Defendants sued in this claim for relief, and each of them, ISBELL suffered severe emotional distress, entitling ISBELL to compensatory damages, and punitive damages, as allowed by law, according to proof at trial.

111.    As a further, direct and proximate result of the intentional, malicious, willful,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

deliberately indifferent, oppressive, reckless, careless, and/or negligent conduct of all Defendants, and each of them, for this cause of action, ISBELL has had to retain the services of attorneys in this matter, and he therefore, seeks reimbursement for attorney's fees and costs.

## IX.

### *RESPONDEAT SUPERIOR LIABILITY* [1]
### (Asserted against Defendants PARTY CITY and
### DOE BUSINESS ENTITIES 1-10)

(Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment by Defendants ZAMECNIK and DOE INDIVIDUALS 1-50)

101.    ISBELL incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

102.    On information and belief, at all relevant times herein, Defendants ZAMECNIK and DOE INDIVIDUALS 1-50, and each of them, were under the control of their respective employers, including Defendants PARTY CITY and DOE BUSINESS ENTITIES 1-10.

103.    At all relevant times herein, the acts of Defendants ZAMECNIK and DOE INDIVIDUALS 1-50, and each of them, complained of herein, were culpable and caused injury and harm to ISBELL, as alleged herein.

104.    At all relevant times herein, the culpable and injurious acts of Defendants ZAMECNIK and DOE INDIVIDUALS 1-50, and each of them, occurred when they, were under the control of their respective employers, Defendants PARTY CITY and DOE BUSINESS ENTITIES 1-10, and such acts by these employees, occurred within the course and scope of their employment.

105.    Based on the foregoing, ISBELL is entitled to invoke the doctrine of *Respondeat Superior* to impose vicarious liability on Defendants PARTY CITY and DOE BUSINESS ENTITIES 1-10, as the respective employers of Defendants ZAMECNIK and DOE INDIVIDUALS 1-50, for the

---

[1] Strictly speaking *Respondeat Superior* is not considered to be a "cause of action" or "claim for relief" but a method of assigning liability to an employer for the conduct of its employees. *See Fernandez v. Penske Truck Leasing Co., L.P.*, 2012 WL 1832571, 1 (D.Nev. 2012) (citing *Cruz v. Durbin*, 2011 WL 1792765 (D.Nev. 2011)).  Accordingly, this section for *Respondeat Superior* is not labeled as a claim for relief, but it seeks to assign liability to Defendants PARTY CITY and DOE BUSINESS ENTITIES 1-10, vicariously, for the acts of their employees, including Defendants ZAMECNIK and DOE INDIVIDUALS 1-50.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

1  culpable conduct of these employees, occurring within the course and scope of their employment.

2                                              **X.**

3                                    **PRAYER FOR RELIEF**

4        WHEREFORE, ISBELL prays for judgment against Defendants, jointly and severally, as

5  follows:

6        1.    For equitable relief, including back pay and front pay;

7        2.    For general, compensatory damages on all claims, in an amount to be proven at trial, and

8              which amount is in excess of the diversity-jurisdictional-basis minimum of $75,000 for

9              the state claims;

10       3.    For special, compensatory damages on all claims, in an amount to be proven at trial, and

11             which amount is in excess of the diversity-jurisdictional-basis minimum of $75,000 for

12             the state claims;

13       4.    For past and future compensatory damages, including incidental and consequential

14             losses, incurred by reason of Defendants' acts, omissions, carelessness, negligence,

15             deliberate indifference, and other culpable conduct described herein, in an amount to be

16             proven at trial, and which amount is in excess of the diversity-jurisdictional-basis

17             minimum of $75,000 for the state claims;

18       5.    For exemplary and punitive damages, as allowed by law, against Defendants in their

19             individual capacities;

20       6.    For costs of the suit incurred herein;

21       7.    For attorneys' fees, costs and prejudgment interest, as allowed by law;

22       8.    For experts' fees, costs as allowed by law, in an amount in an amount to be determined

23             at trial;

24       9.    For Declaratory relief, equitably determined by the Court at trial. Pursuant to 28 U.S.C.

25             § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS

26             30.100, NRS 613.333, and the Court's inherent equitable powers, ISBELL seeks, and is

27             entitled to have, declaratory relief awarded in her favor, to declare her rights and

28             obligations of the Defendants sued herein, which matters are now in controversy or

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a declaration that Defendants unlawfully discriminated, harassed, and retaliated against ISBELL, under the ADA, and otherwise violated ISBELL'S rights under federal Law and state law, as alleged herein, and regarding the rights and obligations arising of the parties, relating to ISBELL'S employment and re-employment.

10.    Based on the foregoing, ISBELL has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury.  This inadequacy is in part based on the fact that PARTY CITY is currently publishing false and defamatory information to prospective employers of ISBELL concerning ISBELL's honesty, competence, and employment tenure with PARTY CITY, which are wrongfully interfering with ISBELL's ability to obtain employment and otherwise defaming her.  As such ISBELL is entitled to injunctive relief, which would include her reinstatement to employment with PARTY CITY, as if never terminated, and/or the removal of adverse information in ISBELL' employment file relating to the claims of this case, and the cessation of false publications to third parties, concerning ISBELL's honesty, competence, and employment tenure with PARTY CITY.  Considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted, and the public interest would not be disserved by issuance of such injunctive relief.  ISBELL herein seeks Injunctive relief, equitably determined by the Court at trial.

11.    For such other relief as the Court may deem just and proper; and

/ / /
/ / /
/ / /
/ / /
/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455

12. Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 7th Day of December 2017.

THE GEDDES LAW FIRM, P.C.

WILLIAM J. GEDDES
Nevada Bar Number 6984
The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, Nevada 89521
(775) 853-9455

*Attorneys for Plaintiff DEVON ISBELL*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 107
Reno, NV 89521
Phone 775-853-9455